## A07A2031. ACE AMERICAN INSURANCE COMPANY v. TRUITT BROTHERS, INC.

(655 SE2d 683)

SMITH, Presiding Judge.

In this insurance coverage case, Ace American Insurance Company ("Ace") appeals from the trial court's order granting Truitt Brothers, Inc.'s ("Truitt") motion for partial summary judgment in its favor with regard to insurance coverage. Ace asserts that the trial court should have interpreted the "vermin" exclusion in its policy to bar coverage. We disagree and affirm.

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Murray v. Fitzgerald Convenient Centers*, 239 Ga. App. 799 (521 SE2d 915) (1999).

Viewed in this light, the record shows that Truitt stored food products in a warehouse owned by Southland Bonded Warehouse, Inc. ("Southland") and that these food products were damaged by a rat infestation resulting from Southland's negligence. Truitt sued Southland and obtained a default judgment totaling $68,262.21. In its complaint and supporting documents, Truitt asserted that the rat infestation resulted from unclean conditions in the warehouse and poor sanitation practices involving Southland's "pallet exchange program."

Ace, Southland's liability insurance carrier, denied coverage for Truitt's judgment against Southland. Truitt then initiated the underlying action against Ace to obtain coverage under the policy, and both parties moved for summary judgment in their favor. Based on its conclusion that the policy language at issue is ambiguous, the trial court granted Truitt's motion for summary judgment and denied Ace's cross-motion for summary judgment.

The policy language at issue provides:

A. Coverage

We will pay for *loss* to Covered Property from any one of the Covered Causes of *Loss*.

1. Covered Property

a. WAREHOUSEMAN LEGAL LIABILITY

Covered Property means the property of others in your custody as a warehouseman accepted by you under written contract or receipt.

. . .

3. Covered Causes of Loss

. . .

a. WAREHOUSEMAN LEGAL LIABILITY

We will pay for *loss* caused by risks of direct physical *loss* to Covered Property, except those causes of loss listed in the Exclusions, that you become legally obligated to pay, *as a result of your negligence,* while the Covered Property is in your custody.

. . .

C. EXCLUSIONS

1. We will not pay for *loss* caused directly or indirectly by any of the following. Such *loss* is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the *loss*. . . .

g. Wear and tear, insects, vermin, deterioration, *loss* of weight, contamination, evaporation, shrinkage, changes in temperature, dryness, wetness, dampness, spotting, discoloring, molding, rusting, frosting, rotting, souring, steaming, change in flavor, leakage, breakage, marring or scratching unless caused by a Covered Cause of *Loss* not excluded elsewhere in this form.

Ace argues that the trial court erred in concluding that the policy language is ambiguous. See *Auto-Owners Ins. Co. v. Parks*, 278 Ga. App. 444, 447 (1) (629 SE2d 118) (2006) (ambiguous insurance contract construed against insurer-drafter). While we agree with Ace's contention that the policy is unambiguous, we also find that it unambiguously provides coverage for the event at issue here.

In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney. Where a provision in a policy is susceptible to

two or more constructions, the courts will adopt that construction which is most favorable to the insured. Nevertheless, if the terms of the contract are plain and unambiguous, the contract must be enforced as written.

(Citations, punctuation and footnotes omitted.) *Harkins v. Progressive Gulf Ins. Co.*, 262 Ga. App. 559, 560 (586 SE2d 1) (2003).

The policy provides coverage for "covered causes of loss," which it describes as "risks of direct physical loss" that are not excluded elsewhere in the policy. In order to obtain coverage for the loss, it must result from the insured's negligence. A layman reading this language would understand that "risk of physical loss" means any cause. See *York Ins. Co. v. Williams Seafood of Albany*, 273 Ga. 710, 712 (2) (544 SE2d 156) (2001).

The exclusion provides that loss caused by vermin is excluded, "unless caused by a Covered Cause of *Loss* not excluded elsewhere in this form." The effect of the exception to the vermin exclusion is that losses caused by vermin are excluded only if the vermin infestation was, in turn, caused by a different exclusion in the policy. For example, if the vermin resulted from a flood sweeping them into the warehouse, the damage caused by the vermin would not be covered under the policy because the policy contained a separate flood exclusion. If, however, the vermin were caused by something not excluded elsewhere in the policy, the vermin exclusion would not apply. In contrast, the same clause excluding vermin also excludes damage caused by wetness. If wetness is caused by a flood, the damage caused by wetness is excluded, because flood losses are excluded by the policy in a separate provision. If, however, the wetness was caused by sprinklers turning on as a result of a fire, the exclusion would not apply.[1]

In this case, Ace points to no evidence showing that a risk excluded in a separate provision of the policy caused the vermin or rat infestation. The record shows, instead, that the infestation resulted from unclean conditions and Southland's pallet exchange practices. As these are covered causes of loss that were not excluded elsewhere in the policy, they fall within the exception to the vermin exclusion. Therefore, the vermin exclusion does not apply, the policy provides coverage for vermin damage resulting from Southland's negligence,

---

[1] While the exclusion may not apply, the policy nevertheless would not provide coverage unless the damage resulted from the insured's negligence.

and the trial court did not err by granting summary judgment in favor of Truitt.[2]

*Judgment affirmed. Barnes, C. J., and Miller, J., concur.*

DECIDED DECEMBER 7, 2007 — 

*Mozley, Finlayson & Loggins, Wayne D. Taylor, Marvin A. Riddle,* for appellant.

*Baker, Donelson, Bearman, Caldwell & Berkowitz, John Hinton IV, Linda A. Klein, Seaton D. Purdom,* for appellee.

---

[2] The Eleventh Circuit's cryptic, unpublished opinion in *Northwest Packing Co. v. Ace American Ins. Co.*, 236 Fed. Appx. 574 (2007), does not alter this result. The opinion is not binding in Georgia courts, *Innovative Clinical & Consulting Svcs. v. First Nat. Bank*, 279 Ga. 672, 674, n. 2 (620 SE2d 352) (2005), and we cannot determine from the facts outlined in the opinion whether the grant of summary judgment to the insurer was based on an analysis that differs from our approach here.